HART v. NORTH GERMAN LLOYD S. S. CO.

(Supreme Court, Appellate Term. February 28, 1905.)

1. CARRIERS—STEAMSHIP—PASSENGERS'. EFFECTS—LOSS—LIABILITY.
   Where shirt studs were taken from the cabin of a passenger on a steam-ship, the carrier's liability was that of an insurer, in the absence of negligence on the part of the passenger.
   [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1529; vol. 44, Cent. Dig. Shipping, § 554.]

2. SAME—EVIDENCE.
   In an action against a steamship company for jewelry taken from plaintiff's stateroom, evidence held not to show plaintiff guilty of negligence.
   McCall, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Louis G. Hart against the North German Lloyd Steamship Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before SCOTT, GIEGERICH, and McCALL, JJ.

Cardozo & Nathan, for appellant.

Choate, Hanford & Laroque, for respondent.

SCOTT, J. It must, I think, be conceded that defendant's responsibility to plaintiff's assignor was similar to that of an innkeeper, and consequently that it is responsible for the loss as insurer, unless plaintiff's assignor was himself guilty of negligence which was a proximate cause of the loss. Adams v. N. J. Steamboat Co., 151 N. Y. 163, 45 N. E. 369, 34 L. R. A. 682, 56 Am. St. Rep. 616. I am quite unable to see that Mr. Harrison was guilty of any negligent act whatever, and, if the fact that he left the shirt hanging on a hook with the studs in it was negligent, it was not the proximate cause of the loss, for, after Mr. Harrison had left his room, Hepach, the cabin steward, and defendant's servant entered the room and saw the shirt hanging with the studs in it. If, owing to the fact that the ship was lying in the harbor of Naples, it was especially unsafe to leave the porthole open and the door unlocked, the steward should have known that fact, and should have taken pains to close the porthole and lock the door. It is suggested that, while it might not be negligent to leave a porthole open and a door unlocked while at sea, it was so to have omitted those precautions while in the port of Naples. Even if this were so, there is nothing in the case to show that the loss occurred from any cause that was especially operative in the Bay of Naples and would not be operative on the high seas. Of course, the plaintiff's assignor might have done a great many things which would have rendered the loss of his studs more improbable. He might have put them in his trunk, or had them put in the purser's safe, or have worn a shirt that fastened with ordinary buttons instead of studs. But, in my opinion, he was not bound to do anything of the sort, and I am confident that the very many persons who constantly embark on sea voyages would be greatly surprised, and reasonably so, if it were to be established as the law that a

duty rested upon them to lock up their staterooms every time they had occasion to leave them. Certainly it was not negligent for the passenger to take his valet ashore with him, instead of leaving him on guard to watch his room, for that was the duty of the steamship company. In my opinion, the evidence fails to show that plaintiff's assignor was guilty of any negligence which contributed to the loss, and the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed, and new trial granted, with costs to appellant to abide the event.

GIEGERICH, J. (concurring). I concur in the conclusion, reached by Mr. Justice SCOTT, that the evidence fails to show that the plaintiff's assignor was guilty of any negligence which contributed to the loss. The mere fact that the plaintiff's assignor knew that peddlers were in the habit of roaming at will over the steamer while it was lying in the harbor of Naples did not require him, in the absence of knowledge of their character, to lock the door of his stateroom, or otherwise take steps to protect his property from theft. On the contrary, it was the duty of the defendant to see to it that the persons whom its officers and employés permitted to enter the ship were not thieves, and if they knew their character, or entertained doubts with respect thereto, it was their duty to take proper precautionary measures to protect the plaintiff's assignor from loss, who had a right to rely upon the faithful performance of such duty by the defendant. Classen v. Leopold, 2 Sweeny, 705, 712. See The John Brooks, 13 Fed. Cas. 661.

Considerable stress seems to have been laid by the court below upon the alleged fact that the studs were left exposed to public view through the porthole; but the plaintiff's assignor testified, without contradiction, that, to the best of his recollection, such porthole was closed or locked on the morning in question, and that the steward was in the habit of opening it.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McCALL, J. (dissenting). In this case the plaintiff's assignor, a Mr. Harrison, accompanied by his wife and attended by a valet, engaged transportation on one of the steamers of the defendant company, shipping at the port of Alexandria, in Egypt, their place of destination being New York. En route the vessel put into Naples, and remained at that port for about 24 hours. Each of Mr. Harrison's party occupied different staterooms, and, on the evening before the day when the event complained of happened, Mr. Harrison retired, leaving a dress shirt, in which were jeweled studs and link buttons, hanging from a hook in his stateroom, which hook was 12 or 14 inches from the porthole, which latter was about 10 inches in diameter, and about 12 or 14 feet above the waters of the bay as the vessel lay moored to the dock in Naples. Arising next morning, Mr. Harrison dressed, and, leaving his stateroom unlocked, went therefrom, leaving behind this shirt, with studs and buttons, still hanging where he had placed them the night before, and, taking his valet with him, went ashore and remained

in Naples the entire day. He had noticed small boats with hucksters plying their trade therefrom on the bay around about the steamer, and had even seen these same merchants about the deck of the steamer vending their wares. It was not his initial trip to this port, but, as a matter of fact, he had several times before made the journey, and had observed that this was the usual condition that attended a steamer's entry into this port. The steward in the employ of the company entered this stateroom, after Mr. Harrison's departure, to perform his usual duties in attendance upon this room, and, while there, he says he saw the shirt containing the studs still hanging there. At some time intermediate the steward's leaving the room and the return of Mr. Harrison, the studs and buttons were torn from the shirt by some one unknown, and this plaintiff, as assignee of Mr. Harrison, seeks to recover from the defendant, alleging the loss to be attributable to the negligence of the defendant.

While it is seemingly settled in this state that the responsibility fixed at common law as between innkeeper and guest is, in questions of this character, to be applied in controversies between the steamboat company and passengers to whom they furnish rooms (Adams v. The New Jersey Steamboat Co., 151 N. Y. 163, 45 N. E. 369, 34 L. R. A. 682, 56 Am. St. Rep. 616), still the wide scope and range taken under this doctrine in fixing the responsibility of an innkeeper never was extended to embrace within its limits loss that is occasioned by the negligence of the person complaining; and that Harrison was guilty of negligence, in my judgment will hardly admit of doubt. I do not mean by this to convey the idea that I believe that it is necessary for a passenger to at all times keep his stateroom locked and bolted, and if he does not do so negligence could be predicated upon his act; but I do insist that under the circumstances as shown upon the proof in this case—that is, while this vessel was at a dock in a port that he knew from previous experience, the waters around about it and its dock were infested with venders of different articles, and whom he knew actually came on board the steamer, and when he knew there was a defective latch on his door, the information as to which he did not impart to the company—there was a duty imposed upon him to have placed these jewels in his trunk; at least, it was incumbent upon him to lock his stateroom door; and more particularly is this true when he was taking with him away from the vessel his valet, whose duty it would have been to watch this room. On the contrary, he left this shirt, with the jewels therein dangling, as an invitation to theft, with door of stateroom opened, and takes with him, as he leaves, the only one who could, so far as he was concerned, exercise any degree of protection under such circumstances. It was palpable negligence, and his own act caused him to suffer the loss, and others should not be made to pay for it.

Judgment should be affirmed, with costs.